UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL LESLIE,

    Plaintiff,

Civil No. 03-1405-HA

OPINION AND
ORDER

CAP GEMINI AMERICA, INC., and
CAP GEMINI ERNST & YOUNG U.S., L.L.C.,

    Defendants.

HAGGERTY, Chief Judge:

    This court previously adopted a Findings and Recommendation in this action, denying plaintiff's Motion for Partial Summary Judgment and defendants' Motion for Summary Judgment, and granting defendants' Alternative Motion for Partial Summary Judgment. This case was reassigned to this court subsequently for purposes of conducting trial. After the reassignment,

1    - OPINION AND ORDER

defendants filed a renewed Motion for Summary Judgment [80]. This Motion is fully briefed and has been taken under advisement without oral argument. For the following reasons, the Motion is denied.

RELEVANT BACKGROUND

Plaintiff Daniel Leslie (plaintiff) initiated this suit alleging that defendants Cap Gemini America, Inc. (CGA) and Cap Gemini Ernst & Young U.S., LLC (Capgemini) (collectively, defendants) breached contractual obligations to pay him commissions on sales that he generated, and violated state laws of either Washington or Oregon that require employers to pay compensation owed to terminated employees. In addressing the parties' cross motions for summary judgment, the Adopted Findings and Recommendation concluded that defendant Capgemini was entitled to summary judgment on plaintiff's statutory wage claim under Washington, and alternatively Oregon, law because although "the evidence could support the conclusion that Capgemini agreed to pay plaintiff commissions for marketing to Longview Fibre [LFCo], it could not support the conclusion plaintiff was an employee of Capgemini when he performed that work." Adopted Findings and Recommendation at 20, 22. Summary judgment on other claims was denied to both plaintiff and defendants.

In adopting the Findings and Recommendation, this court noted that at the heart of the reasoning in the Adopted Findings and Recommendation was the extent of confusion inherent in the parties' relationships:

> As is apparent from the factual background . . . during the relevant time, defendants were parts of a corporate structure that was complex, evolving, and somewhat confusing. In this changing structure, plaintiff was transferred, and the positions and responsibilities of various corporate managers whose conduct is relevant here were also shifted. From the deposition testimony and

> documents before the court, it is apparent there was considerable
> confusion about the relevant corporate structure, and about the lines
> of authority and responsibility. This confusion continues to some
> extent, and from the existing record, the court cannot determine
> with confidence the extent of authority and responsibility that the
> various managers had when decisions and communications relevant
> to this litigation were made.

Order Adopting at 5 (quoting Adopted Findings and Recommendation at 14-15).

After this ruling, the parties sought, and were granted, an opportunity to conduct additional discovery. The case was reassigned to this court, and defendants now seek summary judgment on another aspect of the litigation: that defendant CGA should be dismissed from this litigation as a matter of law because there is no factual dispute that CGA has paid plaintiff in full all of the commissions that CGA owed to plaintiff.

On November 13, 2000, CGA hired plaintiff to work as an account executive selling consulting services. On that day plaintiff signed an Account Executive Employment Agreement with CGA. Plaintiff signed a 2000 Account Executive Annual Incentive Compensation Plan (referred to as the 2000 Compensation Plan) the next day. On March 6, 2001, plaintiff signed a 2001 Account Executive Plan/IT Services Sector Agreement (referred to as the 2001 Compensation Plan) providing for a base salary and setting out a scale of commissions based upon various levels of sales. Both the 2000 and 2001 Compensation Plans provided that commissions would be paid based upon revenue that the employer received and provided that if plaintiff were terminated, "only the revenue incentive compensation shall be calculated and pro-rated, as of the last complete accounting month in which [the employee was] actively employed as a salesperson." Both Compensation Plans also stated that they could be "modified by [CGA] at any time during [the relevant year] in its sole discretion."

The parties agree that plaintiff became an employee of Sogeti U.S. LLC (Sogeti), an entity related to CGA, on January 1, 2002, when CGA transferred its IT Services division to Sogeti. The parties disagree as to whether plaintiff signed a similar 2002 Compensation Plan after becoming an employee of Sogeti. Regarding this issue, the Adopted Findings and Recommendation concluded that there was a triable issue of fact as to whether plaintiff entered into a compensation agreement pertaining to his work with LFCo that fell outside the scope of plaintiff's already-executed Compensation Plans:

> there is no question that plaintiff negotiated with corporate managers representing both CGA, for whom he worked until January 2002, and Capgemini, a separate division whose formation is not entirely clear, over some period of time while he worked to establish a business relationship between defendants and Longview Fibre. In those negotiations, plaintiff obtained the apparently unusual agreement that he would be the sole representative of two subsidiaries or divisions on the Longview Fibre account, and would be paid commissions from both divisions for sales to that client.

Adopted Findings and Recommendation at 15.

Defendants acknowledge that this possible separate agreement remains a triable issue as to plaintiff's relationship with Capgemini, but seek summary judgment as to CGA, because "no reasonable juror could find that CGA entered into some kind of agreement 'outside' [plaintiff's and CGA's] employment relationship." Defendants' Reply at 10-11.

The conclusions of the Adopted Findings and Recommendation differed, however:

> Whether plaintiff is entitled to recover any damages in this action turns in part on the authority or apparent authority of various managers to commit a particular division to pay commissions under these circumstances, and on whether any agreement plaintiff negotiated with defendants is sufficiently definite to constitute an enforceable contract. The question of authority in turn depends in part on who the managers were working for at various stages in the parties' negotiations, and determination of whether the parties[]

4      - OPINION AND ORDER

>  negotiated an enforceable agreement *could be more accurately made upon a full presentation of the facts at trial*.

Adopted Findings and Recommendation 15-16 (emphasis provided).

The parties conducted additional discovery following this conclusion, and defendants now present evidence that Jeff Neville, Vice President of Finance for Sogeti (and who was employed previously by CGA in a similar role), has reviewed relevant commission worksheets and believes that "CGA paid [plaintiff] all money owed pursuant to [plaintiff's] 2001 Compensation Plan for the year 2001." Affidavit of Jeff Neville in Support of Defendant's Renewed Motion for Summary Judgment as to CGA (Neville Aff.) at ¶ 5.

ANALYSIS

Defendants' argument that summary judgment as to CGA is proper because no jury could find that CGA entered into an agreement outside the parameters of plaintiff's and CGA's employment relationship directly contradicts the conclusions established in the Adopted Findings and Recommendation. The additional evidence now offered by defendants[1] may support defendants' assertion that CGA paid all money owed to plaintiff under the 2001 Compensation Plan for work related to LFCo, but fails to establish an absence of genuine issues of material fact regarding whether the parties negotiated a separate, enforceable agreement under which plaintiff

---

[1] The court remains troubled by the nature of this evidence and the timing of its presentation. No persuasive explanation has been offered as to why the significant role played by the Vice President of Finance for CGA in December 2001 (and for Sogeti in 2002), as well as his analysis of plaintiff's commission worksheets, evaded full disclosure until this stage of the litigation. Even if defendants were presented no opportunity to disclose Neville's significance until February 22, 2005, when plaintiff specified his uncertainty about CGA's payments to him in responding to defendants' Second Set of Requests for Admissions, defendants still withheld disclosing Neville until March 31, 2005, the last day of discovery. Accordingly, plaintiff is entitled to conduct a deposition of Neville prior to trial, if plaintiff desires.

"would be the sole representative of two subsidiaries or divisions on the Longview Fibre account, and would be paid commissions from both divisions for sales to that client."  Adopted Findings and Recommendation at 15.

As recognized previously in this litigation, "if plaintiff is entitled to compensation for sales to Longview Fibre other than what he has been paid by Sogeti, determination of the amount may depend in part on the general practices of the divisions the relevant managers represented" and "material issues exist as to whether a binding agreement was concluded, and as to the precise terms of that agreement if it is enforceable."  Adopted Findings and Recommendation at 16.

Newly presented evidence revealing Jeff Neville's interpretation of commission worksheets and the 2001 Compensation Plan fail to eliminate these material issues.  Nor does the newly presented evidence challenge the previously adopted conclusion that plaintiff may be able to establish that he is entitled to compensation "*for unpaid commissions from CGA and/or Capgemini*," pursuant to terms of an agreement he negotiated with defendants' managers, and that if he does establish this, "material issues of fact remain as to the method for determining the sales upon which commissions are owed."  Adopted Findings and Recommendation at 17-18 (emphasis provided).  Defendants' reliance upon newly presented evidence to bolster an insistence that obligations under the parties' 2001 Compensation Plan were satisfied fails to establish an absence of genuine issues of material fact that would compel dismissal of CGA at this point in the litigation.

\\\

CONCLUSION

6	- OPINION AND ORDER

For the reasons provided above, defendants' Renewed Motion for Summary Judgment as to CGA [80] is denied. The court will conduct a telephonic status conference on Monday, February 13 at 2 p.m. for purposes of establishing a final trial schedule for this matter, including deadlines for plaintiff's deposition of Neville (if plaintiff elects to conduct such a deposition), and deadlines for submitting trial documents. The court will place the call.

IT IS SO ORDERED.

Dated this 1 day of February, 2006.

    /s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge